# Cain v. Campbell's Administratrix.

(Decided Nov. 4, 1936.)

844

R. L. POPE for appellant.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

M. B. Campbell, a citizen and resident of McCreary county, Ky., died intestate in August, 1928, and his daughter, Myrtle Campbell, was appointed administratrix of the decedent's estate.

It appears that in the lifetime of the decedent he and appellant, Dr. E. C. Cain, were partners in certain business transactions. They owned jointly a tract of timber land in McCreary county and manufactured and sold the merchantable timber thereon as partners. They were also engaged in buying McCreary county warrants, jury claims, witness fees, etc. It appears that the decedent kept the partnership books which were not kept according to modern bookkeeping methods and it is somewhat difficult to determine the exact status of their partnership accounts. The administratrix and Dr. Cain being unable to settle the partnership accounts, in August, 1932, the administratrix filed her petition in equity in the McCreary circuit court, naming therein as defendants Dr. Cain, William McKee, and Joe Kidd, the latter two not being parties to this appeal. She alleged that her decedent and Dr. Cain were engaged in certain partnership enterprises in substance as indicated above and that she does not have any of the checks or deposits or other accounts had in relation to their partnership business.

In relation to the county warrants she alleged:

"She states that upon the death of her intestate and among his valuable papers she found certain McCreary County warrants simply indorsed in pencil thereon 'C & C' and that there were many other similar warrants bearing no indorsement; that the defendant, Dr. E. C. Cain and her intestate some time prior to his death made some sort of settlement with Dr. E. C. Cain in relation to this part-

nership and closed out in the Bank of McCreary County the partnership account; that she does not know and cannot state whether the list of warrants delivered to her as administratrix marked as aforesaid is the joint property of her decedent and the said Dr. E. C. Cain, or whether these were the proportion of said warrants due him at the time the settlement was made and the bank account was closed, but that said defendant has, or should have a complete statement of the transactions upon said items.''

In regard to the lumber account she stated that her decedent kept accurate books showing the amount of the costs of manufacturing and transportation of said lumber to the railroad, the loading of same on cars, and in substance that her decedent's books showed that Dr. Cain had received his one-half of all net profits thereon except for one car of such lumber which had not been sold at the time of her decedent's death, and she tendered Dr. Cain one-half of the net profit on that lumber and alleged that the decedent was not indebted to Dr. Cain in any additional amount upon the partnership lumber transactions. She further alleged that Dr. Cain was claiming other items of indebtedness against the estate of the decedent, but there were no unsettled matters between the decedent and Dr. Cain other than above set out.

It will be seen from the allegations of her petition that she asserted that her decedent's estate was not indebted to Dr. Cain on the lumber account, but with reference to the warrant account she stated that she did not know the status of it and whether or not certain warrants found among her decedent's papers were the property of her decedent or partnership warrants unsettled for with Dr. Cain.

Dr. Cain filed his answer and counterclaim, denying that there were no unsettled matters between him and the estate of the decedent, and pleaded that several years prior to the death of the decedent he and the decedent had been engaged as partners in buying county warrants, jury claims, and witness fees, and that they were also engaged in the lumber business as partners, the net profits of all partnership transactions to be divided equally between them; that they maintained a partnership or joint bank account for the purpose of dealing

with the county warrants, but had settled or closed said bank account previous to the death of the decedent and had ceased buying county warrants, witness fees, etc., but at that time they had on hand certain unsold partnership warrants marked "C & C" (Campbell and Cain) which were in the possession of the decedent at the time of his death; that the total amount of such partnership warrants with interest thereon was and is approximately $1,350, and asked that he recover of the estate of the decedent one-half of that amount. He also alleged that their lumber account was unsettled and there was a certain amount of lumber unsold and undisposed of at the time of the death of the decedent and that decedent's estate was indebted to him in the sum of $677.40 on the lumber account. He also alleged that he had paid taxes on the partnership land amounting to $20 and that the estate of decedent was indebted to him for half of that amount. He also stated that during the year, 1927, one Gilmore Taylor, an employee of the decedent, while working on a lumber yard for decedent, received certain personal injuries, a broken leg, and the decedent requested and secured his (Dr. Cain's) services in treating said Taylor and giving him medical attention on account of said injury, and that decedent promised and agreed to pay him for his services the sum of $100, which was a reasonable bill for the services rendered, which sum had not been paid and was yet owing to him by the estate of the decedent. He prayed to recover of the estate of the decedent the sums above set out with legal interest.

By subsequent pleadings the issues were made and the evidence taken by deposition and the case submitted to the chancellor on the pleadings, evidence and exceptions of the respective parties to the evidence of the administratrix and of Dr. Cain, and upon consideration of the record the court refused to allow any of the items of indebtedness claimed by Dr. Cain against the estate of decedent and dismissed his answer and counterclaim in toto. Dr. Cain appeals.

The administratrix testified that the decedent kept books of all his transactions with Dr. Cain and that she was familiar with his manner of bookkeeping. Testifying from the books, she said that they showed that all the lumber which had been manufactured from the partnership land had not been marketed and that she as ad-

ministratrix sold a carload of the lumber and accounted to Dr. Cain for his part of the net profits. The books showed the amount of lumber manufactured and the amount sold and the price received therefor, and also showed the expenses of manufacturing and marketing it and the net proceeds.

It was competent for the administratrix to introduce the books of the decedent and identify them, but, not having any personal knowledge of the facts recorded therein, she could not testify as to the accuracy or contents of same. Cincinnati, N. O. & T. R. Ry. Co. v. Smith & Johnston, 155 Ky. 481, 159 S. W. 987.

It appears that the books, though somewhat vague and indefinite, indicated that decedent had accounted to Dr. Cain for his part of the net proceeds of the lumber account except that sold by the administratrix, for which she accounted to Dr. Cain. It is doubtful that any of Dr. Cain's evidence relating to the lumber account is competent. He said that he did not know what prices the decedent received for the lumber except what decedent told him, and, of course, this was incompetent. He further stated that he did not know what prices were paid to have the lumber sawed except information from other parties, which also was incompetent. The administratrix denied in her pleadings that the estate of her decedent was indebted to Dr. Cain in any amount on the lumber account, and this cast the burden upon Dr. Cain to establish his claim, which we think he failed to do. Upon the meager competent evidence adduced, the chancellor found that the decedent's estate was not indebted to Dr. Cain on the lumber account, and, the evidence being such as to leave reasonable minds in doubt, we are unauthorized to disturb the finding of fact by the chancellor on the lumber account, and the judgment on that item should be affirmed.

We now come to the question concerning the partnership county warrants. It is conceded that the decedent had charge of the buying and selling of the county warrants, Dr. Cain only furnishing his share of the money and sharing in the profits realized from a sale of the warrants. It is also conceded that the decedent dealt in warrants on his individual account in addition to the partnership warrant account with Dr. Cain and that all partnership warrants were marked "C & C" (Campbell & Cain). It is also agreed that the

decedent and Dr. Cain had settled their partnership bank account relating to the warrant account some time previous to the death of the decedent, but the books do not show that they made a settlement of the undisposed of warrants or had divided them in kind or otherwise settled their warrant account business except the funds already on deposit in the bank. The administratrix insists that they had divided the warrants in kind and that the ones found with the decedent's papers marked "C & C" had been turned over to the decedent as his share of the undisposed of warrants at the time they settled their bank account, but it seems that she only infers this from the fact that the bank account had been settled, and once this inference is eliminated there is no evidence that the warrants had been divided in kind between the partners or that the warrants marked "C & C" were the individual property of the decedent. The judgment of the chancellor relating to the warrant account also assumes that the warrants marked "C & C" were the individual property of the decedent because the partners had settled their bank account, which represented the funds realized from a sale of warrants which had actually been sold in the lifetime of the decedent. That part of the judgment reads:

> "The court is of the opinion and holds that at the time of closing the partnership bank account and checking of funds belonging to the partnership, warrants formerly purchased jointly by Campbell and Cain were settled and that the defendant, Dr. E. C. Cain had no interest in any of the warrants held by said Campbell at the time of his death."

The partnership earmark "C & C" on the warrants undisposed of furnishes prima facie evidence that they were partnership property and the burden then shifted to the administratrix to show that the warrants had actually been divided in kind and settled between the decedent and Dr. Cain previous to decedent's death, and the mere fact that the partnership bank account had been closed previous to the death of decedent did not in itself sustain the burden. It is shown that at the time they closed their bank account they ceased purchasing county warrants on account of their depreciation in value and the difficulty they were encountering in disposing of them. But the closing of the bank account and the cessation of purchasing warrants does not mean

necessarily that they divided the warrants in kind which were unsold at that time.

Upon the record before us we are constrained to the conclusion that the administratrix failed to establish that the warrants marked "C & C" were the individual property of her decedent and that Dr. Cain is entitled to his share of these warrants.

The record before us does not disclose the definite sum or value of the partnership warrants, and we are unable to fix any definite sum, but upon a return of the case to the lower court the chancellor will ascertain the exact sum of these warrants and adjudge to Dr. Cain his share of them.

On the $20 item claimed by Dr. Cain for taxes paid on the partnership land there is no conflict in evidence. Dr. Cain testified that after the death of the decedent he paid "about $20.00" taxes on the partnership land, and his evidence on this point was competent and undisputed. It is insisted for the administratrix that, Dr. Cain having paid these taxes after the death of the decedent, he cannot now assert it against the estate, but, if he is entitled to recover his share of the taxes paid by him, he should look to the heirs of the estate. We cannot concur in this theory. It being partnership land, Dr. Cain had the right, and it was his duty, to pay the taxes thereon and avoid a sale of the property in satisfaction of such taxes and by so doing he saved the estate and himself the costs of such tax sales or loss of the property in the event the land was not redeemed. And, furthermore, the taxes were a debt against the estate for which the heirs and distributees of the estate would have eventually been complled to pay, and it is immaterial whether they pay it to Dr. Cain or to the taxing authorities. The chancellor will also ascertain the exact amount of the taxes paid on the partnership land by Dr. Cain and allow him one-half of such sum.

We now come to the $100 item claimed by Dr. Cain against the estate for doctor bill for treating Taylor. Dr. Cain testified that the decedent engaged his services to attend Taylor and promised to pay him therefor the sum of $100, but his testimony in that respect is entirely incompetent in so far as it relates to any contract or conversation with the decedent. Section 606, Civil Code of Practice. But other parts of his testimony was

competent. He testified as to the services rendered Taylor and that $100 was a reasonable bill for such services. Walter Kidd testified that he knew that Taylor got his leg broken while he was loading lumber for the decedent at Pine Knot and that was not the partnership job but the individual business of the decedent, and that he knew the decedent got Dr. Cain to treat Taylor. Thus we have the undisputed evidence of Kidd that the decedent did employ Dr. Cain to treat Taylor and the evidence of Dr. Cain as to the services rendered and the sum claimed is a reasonable bill therefor. We think this is sufficient to establish Dr. Cain's claim on this item which should have been allowed.

Wherefore the judgment is affirmed as to the lumber account and reversed on the other accounts and remanded for proceedings consistent with this opinion.